**EAGLE MARINE SERVICES, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Alfred B. Wolfskill, Respondents.**

No. 95–70189.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1997.

Decided June 16, 1997.

Robert H. Madden, Madden & Crockett, Seattle, WA, for petitioner.

Samuel J. Oshinsky and Laura J. Stomski, Office of Workers' Compensation Programs, United States Department of Labor, Washington, DC; J. Bradford Doyle, Corte Madera, CA, for respondents.

Before: LAY,[*] BEEZER and TROTT, Circuit Judges.

LAY, Senior Circuit Judge:

Alfred Wolfskill was injured while working as a longshoreman for Eagle Marine Services, Ltd. ("Eagle Marine"). Eagle Marine voluntarily paid Wolfskill workers' compensation benefits from November 13, 1988, through January 13, 1989, a period of almost nine weeks. In calculating the benefits, Eagle Marine used the formula for temporary total disability set forth in § 8(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (the "Act"). Section 8(b) entitles workers with a qualifying temporary total disability to be paid 66 2/3% of their average weekly wages during the period of disability. Wolfskill and Eagle Marine stipulated that Wolfskill's average weekly wage was $754.04, two-thirds of which yields a compensation rate of $502.69 per week.

While Wolfskill was off work due to his injury, five paid holidays under the longshore contract occurred.[1] In addition to his workers' compensation benefits, Wolfskill received $158.64 for each of the five holidays. In order to become entitled to the holiday pay under the longshore contract, Wolfskill had to work a specified number of hours in the previous payroll year, and then remain a registered longshoreman on the date of the holiday.[2]

---

[*] Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

[1.] There is some confusion in the record as to whether there were four or five holidays during this period. Eagle Marine suggests that, despite the ALJ's statement that there were four such holidays, there were five holidays and Wolfskill was compensated for five holidays. These were Thanksgiving, Christmas Eve, Christmas Day, New Year's Eve, and New Year's Day. However, Eagle Marine only attempted to offset the payments to Wolfskill for four of those holidays, the reason for which is unclear.

[2.] Under the longshore contract, a worker is entitled to holiday pay for fifteen listed holidays, as long as the worker either (1) worked in excess of 800 hours in the previous payroll year and is "available for work" for at least 2 of 5 days during the week in which the holiday falls, unless the worker is out because of sickness or injury, or (2) worked in excess of 1300 hours in the previous year. The previous payroll year, also called the qualifying year, for purposes of holiday pay, runs from the Friday before Christmas to the Friday before Christmas of the year immediately previous to the one in which the holiday

Eagle Marine reduced the amount of workers' compensation benefits it paid to Wolfskill during the weeks it paid him holiday pay. Thus, during the weeks in which he received holiday pay, Wolfskill's compensation rate was for temporary *partial* disability, rather than temporary *total* disability. In cases of temporary partial disability, where the worker retains some wage-earning capacity following an employment injury, § 8(e) of the Act entitles the worker to two-thirds of the difference between his average weekly wage before the injury and his wage-earning capacity after the injury. 33 U.S.C. § 908(e). Eagle Marine maintained that it was entitled to reduce Wolfskill's compensation rate during the weeks in which he received holiday pay because his injury had not destroyed his capacity to earn such holiday pay. The parties agree, and the ALJ found, that Wolfskill's average weekly wage, determined from his earnings during the year before his injury, included holiday pay Wolfskill received that year.

Wolfskill filed a claim for the amount of the offset that Eagle Marine had taken against his disability compensation. The parties stipulated to all the facts and presented the single issue of whether Eagle Marine was entitled to reduce Wolfskill's disability compensation based on his postinjury receipt of holiday pay. After holding a hearing, the ALJ found that Wolfskill was entitled to temporary total disability benefits, that the receipt of holiday pay, based on work performed in the previous payroll year, does not establish a postinjury wage-earning capacity, and that there was no authority under the Act for Eagle Marine to offset the holiday pay against its payment of temporary total

disability benefits.[3] The Benefits Review Board affirmed the ALJ's decision. Eagle Marine now appeals to this court pursuant to 33 U.S.C. § 921(c). We affirm.

The central purpose of the Longshore & Harbor Workers' Compensation Act is "to compensate employees (or their beneficiaries) for wage-earning capacity lost because of injury." *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, ——, 115 S.Ct. 2144, 2148, 132 L.Ed.2d 226 (1995). Wolfskill was originally compensated for temporary total disability under § 8(b).[4] During the weeks Wolfskill received holiday pay, Eagle Marine paid him under the formula of § 8(e)[5] for temporary partial disability, based on Eagle Marine's belief that the longshore contract provided Wolfskill with the wage-earning capacity to earn the holiday pay, which constitutes wages. Section 8(h) provides that the wage-earning capacity of an injured employee for purposes of determining temporary partial disability under § 8(e) "shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity." 33 U.S.C. § 908(h).

On appeal, Eagle Marine asserts that it should be entitled to offset the compensation paid to Wolfskill during the weeks he received holiday pay because he did not lose any holiday pay as a result of his injury, and therefore the portion of his compensation which represents wages for days designated holidays amounts to an overcompensation. It argues that Wolfskill's injury did not "incapacitate" him from earning holiday pay during the 8 6/7 weeks of postinjury time loss; therefore, Eagle Marine argues that Wolfskill's disability was a partial, not a total,

falls. Wolfskill's wage records indicate that in the qualifying year, here December 22, 1986, through December 23, 1987, he worked 1,695.50 hours.

3. The only statutory basis for a credit is § 14(j), which authorizes reimbursement for "advance payments of compensation." 33 U.S.C. 914(j). There is no allegation by Eagle Marine that the holiday pay at issue was intended as an advance payment of compensation.

4. Temporary total disability is compensated under the Act as follows: "In case of disability total in character but temporary in quality 66 2/3 per centum of the average weekly wages shall be

paid to the employee during the continuance thereof." 33 U.S.C. § 908(b).

5. Temporary partial disability is compensated under the Act in the following manner: "In case of temporary partial disability resulting in decrease of earning capacity the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the injury and his wage-earning capacity after the injury in the same or another employment, to be paid during the continuance of such disability, but shall not be paid for a period exceeding five years." 33 U.S.C. § 908(e).

disability. Eagle Marine submits that the holiday pay Wolfskill received after his injury "fairly and reasonably" represented his wage-earning capacity within the meaning of § 8(h).

Both Wolfskill and the Director of the Office of Workers' Compensation Programs ("Director"), argue that Wolfskill's receipt of holiday pay does not indicate a wage-earning capacity. Because this interpretation of the statute is both reasonable and consistent with our case law, we agree.[6] We hold that Wolfskill's postinjury receipt of holiday pay does not "fairly and reasonably represent" a wage-earning capacity under § 8(h). Wolfskill is entitled to temporary total disability compensation without an offset by Eagle Marine.

The parties dispute when exactly Wolfskill "earned" the holiday pay. Wolfskill did not perform any work during the period he received holiday pay. Under the longshore contract, Wolfskill's entitlement to the holiday pay was based principally upon his working a certain number of hours in the previous year. Although the holiday pay did not constitute wages earned in the previous payroll year, it was a measure of pre-injury earning capacity, not of postinjury earning capacity. The receipt of such holiday pay did not reflect a capacity to earn wages. The Director suggests that Eagle Marine's emphasis on the timing of the receipt of the wages erroneously equates earning with receipt and obscures the distinction between wages and wage-earning capacity. We agree. *See Sproull v. Director, OWCP*, 86 F.3d 895 (9th Cir.1996) (rejecting the employer's argument that vacation pay received postinjury, which was earned the previous calendar year, constitutes postinjury earnings), *cert. denied*, — U.S. —, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997).[7]

The decision of the Benefits Review Board affirming the ALJ's order awarding benefits to Alfred Wolfskill is affirmed.

AFFIRMED.

---

6. Great deference is given to the statutory interpretation of the Act urged by the Director, who is charged with administering the Act. This court has stated that where the relevant portion of the Act is "easily susceptible to the Director's interpretation, we need go no further." *Hunt v. Director, OWCP*, 999 F.2d 419, 421 (9th Cir.1993) (quoting *Force v. Director, OWCP*, 938 F.2d 981, 984 (9th Cir.1991)).

7. Eagle Marine seeks to distinguish *Sproull* on the grounds that all of the holidays that occurred during Wolfskill's time loss were non-working holidays so Wolfskill did not lose the opportunity to work on those holidays. We reject this argument. Our holding that the receipt of holiday pay did not "fairly and reasonably represent" a wage-earning capacity prevents Eagle Marine from compensating Wolfskill for a temporary partial, rather than total, disability.