[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————

No. 96-9288

————————————

BRB #94-0507, OWCP #6-136921

SEACO AND SIGNAL MUTUAL ADMINISTRATION,

Petitioner,

versus

ALONZO RICHARDSON and DIRECTOR,
OFFICE OF WORKERS COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

Respondents.

————————————

Petition for Review of an Order of the Benefits Review Board
United States Department of Labor

————————————

**(March 11, 1998)**

Before ANDERSON and BLACK, Circuit Judges, and HOEVELER*, Senior District
Judge.

PER CURIAM:

————————————
* Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of
Florida, sitting by designation.

In this case, SEACO and Signal Mutual Administration[1] ("the petitioners") petition for review of an order of the United States Department of Labor Benefits Review Board affirming a decision by an Administrative Law Judge (ALJ) in which the ALJ denied the petitioners' request for a credit for certain payments made to the respondent, Alonzo Richardson, during the period of his disability. Because we conclude that the container royalty and holiday/vacation payments received by Richardson do not constitute "advance payments of compensation" under 33 U.S.C. § 914(j) and do not represent post-injury "wage-earning capacity" under 33 U.S.C. § 908(h), we affirm the Benefits Review Board's affirmance of the ALJ's decision denying the petitioners' request for a credit.

## I. FACTS AND PROCEDURAL HISTORY

On April 8, 1991, Alonzo Richardson injured his lower back and stomach while in the course of his employment as a longshoreman with SEACO. This injury resulted in Richardson's absence from work during the period from April 9, 1991, through January 31, 1992.[2] SEACO paid compensation to Richardson for temporary total disability from April 9, 1991, to August 1, 1991, and from September 5, 1991, to December 18, 1991. In December 1991, pursuant to his International Longshoremen Association ("ILA") contract, Richardson received a lump sum payment of

---

[1] Signal Mutual Administration is the insurance carrier for SEACO.

[2] Richardson worked on August 21 and 23, 1991, and did not seek temporary total disability benefits for those two days.

approximately $10,000 in "container royalty" and "holiday/vacation" pay.[3] In a

hearing before an ALJ, Richardson sought temporary total disability compensation for

the brief periods of time not already paid by SEACO; at the same hearing the

petitioners sought a credit for alleged overpayments of compensation due to the

container royalty and holiday/vacation pay Richardson received pursuant to his ILA

contract.[4] In a September 22, 1993, order, the ALJ granted Richardson's request for

temporary total disability compensation during the disputed time periods and denied

the petitioners' request for a credit for the container royalty and holiday/vacation

---

[3] The parties stipulated that under Richardson's ILA contract, a longshoreman with 700 hours of work in the contract year, which runs from October 1 to September 30, qualifies for container royalty pay and holiday/vacation pay. These payments are made from the Container Royalty and Holiday/Vacation Funds and are made in December for each contract year ending the previous September 30. Under the ILA contract, if an employee is injured while in the course of employment and receives temporary total disability payments, then the employee is entitled to 3 hours per day toward his container royalty pay requirement and 20 hours per week toward his holiday/vacation pay requirement. These hours are referred to as "gratuity" hours. Richardson had worked 635 hours prior to his injury on April 8, 1991, and worked 12 more hours when he returned to work on August 21 and 23, 1991. He was credited with the remaining 53 hours necessary to meet the 700 hour requirement by virtue of receiving "gratuity" hours during the period of his disability.

[4] The petitioners also claimed that Richardson received similar container royalty and holiday/vacation payments in December 1992 for the 1992 contract year, and they also sought a credit for these payments.

payments made to Richardson during the period of his disability.[5] Only the latter ruling was challenged by the petitioners in their appeal to the Benefits Review Board. The ALJ's decision was deemed affirmed by the Benefits Review Board pursuant to Public Law 104-134 because the petitioners' appeal was pending before the Board for longer than a year and was not acted upon before September 12, 1996. This affirmance is considered a final order of the Benefits Review Board, and thus the petitioners filed a petition for review of the order before this court.

## II. DISCUSSION

The only issue raised in this appeal is a legal question, and thus we will engage in de novo review of the ALJ's decision. The petitioners contend that they are entitled to a credit under § 14(j) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 914(j), et seq. ("LHWCA"), which provides that "[i]f the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." 33 U.S.C. § 914(j) (1986). We conclude that the petitioners are not entitled to a credit under § 14(j) because they have introduced no evidence that the container royalty and holiday/vacation payments made to Richardson were intended as advance payments "in lieu of compensation," as is required under § 14(j) of the LHWCA. See Branch v. Ceres Corp., 29 BRBS 53, 55 (1995), aff'd mem., 96 F.3d 1438 (4th Cir. 1996). The fact that Richardson and other

---

[5] The ALJ resolved a number of other issues that are not relevant to this appeal.

4

longshoremen are able to "earn" these payments regardless of whether they are disabled "belies a finding that these payments were intended as advance payments of compensation." Trice v. Virginia International Terminals, Inc., 30 BRBS 165, 168 (1996) (reversing ALJ's decision to grant employer a credit under § 14(j) for container royalty and vacation/holiday payments made to employee during his period of disability). Section 14(j) deals with situations in which an employer voluntarily continues the salary of an injured employee and the employee subsequently establishes an entitlement to disability benefits that are lower than the voluntary salary payments made by the employer. See generally, Tibbetts v. Bath Iron Works, Corp., 10 BRBS 245, 247-248 (1979) (concluding that employer was entitled to a credit under § 14(k) of the LHWCA).[6] In that situation, the employer is entitled to a credit under § 14(j) for its advance payments of salary because the salary continuation is considered an advance on disability benefits. The instant situation simply is not contemplated by § 14(j) of the LHWCA.

The petitioners argue that denying an employer a credit for container royalty and holiday/vacation payments made to an employee during a period of disability is unfair because container royalty and holiday/vacation payments are included in determining

---

[6] Section 14(k) was the precursor to § 14(j) and also allowed a credit for employers that made "advance payments of compensation" to an employee.

an employee's pre-injury "average weekly wage."[7]  See Lopez v. Southern Stevedores,

23 BRBS 295, 300 (1990) (holding that container royalty and holiday/vacation

payments should be included in determining an employee's pre-injury "average weekly

wage" because these payments are part of an employee's income).  Under the

petitioners' theory, container royalty and holiday/vacation payments must be treated as

"wages" for all purposes, including employer credits, in order to avoid double recovery

for the employee.  See Codero v. International Terminal Operating Co., 25 BRBS 332,

337-338 (ALJ) (1991); Mitchell v. Smith & Kelly Co., 25 BRBS 201, 207 (ALJ)

(1991).  The two ALJ decisions relied on by the petitioners, Codero and Mitchell, did

not find that the employer was entitled to a credit under § 14(j) of the LHWCA.  See

Codero, 25 BRBS at 339 (specifically noting that the employer was not seeking a

credit under § 14(j)); Mitchell, 25 BRBS at 207-208 (same).  Rather, Codero and

Mitchell allowed the employer a credit because the ALJ found that container royalty

and holiday/vacation payments represented post-injury "wage-earning capacity" to the

---

[7] Pre-injury "average weekly wage" is used to calculate a disabled employee's entitlement to disability benefits.  If an employee is found to be temporarily *totally* disabled, his disability benefits are equal to two-thirds of his pre-injury "average weekly wage."  33 U.S.C. § 908(b).  If an employee is only temporarily *partially* disabled, then he receives two-thirds of the difference between his pre-injury average weekly wage and his remaining earning capacity. 33 U.S.C. § 908(c)(21) (1986).

6

employee and thus the employee was partially,[8] rather than totally, disabled.   This

reasoning was recently rejected in both <u>Eagle Marine Services v. Director, Office of</u>

<u>Workers Compensation Programs</u>, 115 F.3d 735, 737 (9th Cir. 1997), and <u>Branch v.</u>

<u>Ceres Corporation</u>, 29 BRBS 53, 55-56 (1995), <u>aff'd mem.</u>, 96 F.3d 1438 (4th Cir.

1996).  In <u>Eagle Marine Services</u>, the court concluded that the disabled employee's

receipt of holiday pay did not reflect *post*-injury "wage-earning capacity" under § 8(h)

of the LHWCA[9] because, under the ILA contract, the employee's entitlement to the

holiday pay "was based principally upon his working a certain number of hours in the

previous year." <u>Eagle Marine Services</u>, 115 F.3d at 737 (concluding that the

employee's holiday pay was "a measure of pre-injury earning capacity, not of post-

injury earning capacity" and that the employer's emphasis on the timing of the receipt

of the wages "erroneously equates earning with receipt and obscures the distinction

between wages and wage-earning capacity").  We agree.  The lump-sum container

royalty and holiday/vacation payments received by Richardson in December 1991 were

principally earned as a result of Richardson's pre-injury employment during the

---

[8] In the case of a temporary *partial* disability, the employer gets credit for the employee's post-injury "wage-earning capacity."   <u>See</u> <u>supra</u> note 7.

[9] Section 8(h) provides that the wage-earning capacity of an injured employee for purposes of determining temporary partial disability under § 8(e) "shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity."   33 U.S.C. § 908(h) (1986).

7

contract year ending September 1991. The "gratuity" hours that Richardson received during his period of disability were credited to Richardson pursuant to the terms of the ILA union contract and were not based on any services rendered by Richardson to SEACO. Therefore, we hold that Richardson's receipt of container royalty and holiday/vacation payments does not represent post-injury "wage-earning capacity" under § 8(h), that the payments do not convert his temporary total disability to a partial disability, and thus that the petitioners are not entitled to any credit for these payments to Richardson during the period of his disability.

For the foregoing reasons, we hold that the petitioners are not entitled to a credit under § 14(j) for container royalty and holiday/vacation payments made to Richardson during the period of his disability; and we hold that those payments do not represent post-injury "wage-earning capacity" under § 8(h) and thus those payments do not convert Richardson's temporary total disability into a partial disability. Accordingly, the Benefits Review Board's administrative affirmance of the ALJ's decision denying the petitioners' request for a credit is affirmed.

AFFIRMED.